FILED

2024 Feb-27  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ROLAND EDGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: 5:19-cv-01977-LCB |
| | ) | |
| KRISTA MCCABE, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

---

## BRIEF IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT BY OFFICERS MCCABE AND PERILLAT

---

C. Gregory Burgess
L. Franklin Corley IV
Stephanie Margaret Hall
**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
lfc@lanierford.com
smh@lanierford.com

**Attorneys for defendants Officer Krista McCabe,
Officer Cameron Perillat, and City of Huntsville, Alabama**

# TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................1

II.    **STATEMENT OF FACTS** ..................................................2

    A.    **Response to Movant's Statement of Facts** ........................2

    B.    **Additional Undisputed Facts** .............................................4

III.   **ARGUMENT** ........................................................................9

    A.    **Law-of-the-Case Doctrine Is Not Applicable Here** .........11

    B.    **Probable Cause Existed To Arrest Edger** .......................14

        1.    **Probable Cause Existed to Arrest Edger for Violating Section 17-103** ...............................................14

        2.    **Probable Cause Existed to Arrest Edger for Violating Section 17-71** .................................................17

        3.    **Probable Cause Existed to Arrest Edger for Violating Ala. Code § 32-8-83 (1975)** ..........................................20

        4.    **Probable Cause Existed to Arrest Edger for Violating Section 73.21.** ..........................................................21

IV.   **CONCLUSION** ....................................................................24

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| ROLAND EDGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: 5:19-cv-01977-LCB |
| | ) | |
| KRISTA MCCABE, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFF'S RENEWED
MOTION FOR PARTIAL SUMMARY JUDGMENT BY
OFFICERS MCCABE AND PERILLAT**

Defendants Officer Krista McCabe ("Officer McCabe") and Officer Cameron Perillat ("Officer Perillat") jointly submit this brief in opposition to plaintiff Roland Edger's ("Edger") renewed motion for partial summary judgment filed in this case (doc. 60).[1]

## I.    INTRODUCTION

Contrary to Edger's argument before the Court, the law-of-the-case doctrine is not entirely dispositive of the section 1983 false arrest liability issues in this case. In short, while the Eleventh Circuit decided the legality of **some** of the potential bases for Edger's arrest, it did not consider—let alone conclusively

---

[1] Edger only moves for partial summary judgment on the issue of liability with respect to his 42 U.S.C. § 1983 claims for false arrest against Officers McCabe and Perillat. As such, only those claims are addressed in this brief.

1

adjudicate—**all** of them. The reality is Edger could have been charged with any number of **other** criminal offenses, and defendants are free to present at trial any of these alternative grounds for upholding Edger's arrest as part of their defense. Accordingly, Edger's motion for partial summary judgment lacks merit and is due to be denied.

## II.     STATEMENT OF FACTS

### A.     Response to Movant's Statement of Facts[2]

1-2.     Admitted.

3.     Admitted that when Kendraus Turner ("Turner"), the security guard at Progressive Union Missionary Baptist Church in Huntsville, Alabama ("church"), was asked by the 9-1-1 operator whether he wanted "an officer to make contact with [him] or just check out the subjects," Turner responded "just check them out." (Ex. G, Turner Dep., Tab 1; Ex. J, Joyner Decl., Tab 6, 03:20-3:28).

4.     Admitted.

5.     Admitted that Edger manages, paints, estimates, and does some mechanic and administrative work at Auto Collision Body Shop ("shop"). (See Ex. A, Edger Dep, pp. 19-20).

---

[2] To the extent Officers McCabe and Perillat admit these facts, they do so only for the purposes of this brief and reserve the right to challenge them in any later proceedings, including trial.

6.      Admitted that one of Edger's customers was an employee of the school, which was operated by the church. Admitted that the customer left the car key for Edger at the front desk and that Edger went to the church to retrieve the key at approximately 2:00 p.m.

7.      Denied because there is no evidence as to what Edger did with the envelope. (See Ex. A, Edger Dep, pp. 66-67).

8.      Admitted.

9.      Denied as unsupported by the cited evidence. Justin Nuby ("Nuby") said to Edger: "I think security is pulled up." (Ex. A, Edger Dep, p. 80).

10.     Admitted.

11.     Denied as conclusory and unsupported by the cited evidence.

12.     Admitted that Edger was facing the customer's car with his back towards Officer McCabe and that Edger heard Officer McCabe ask what he was doing. Admitted that Edger responded that he was getting the car fixed, which he said was a customer's car and gave an incorrect name of "Ghosh Patel."

13-16.      Admitted.

17.     Denied as conclusory and unsupported by the cited evidence.

18.     Admitted that Edger resisted providing identification to Officer McCabe three times and that as he was being arrested, Edger said "if you will call

this lady." (Ex. A, R. Edger Dep., Tab 4; Ex. J, Joyner Decl., Tab 1, 20:37:20-20:37:50).[3]

19.     Admitted.

20-21.     Denied as conclusory and unsupported by the cited evidence.

22.     Admitted that, while being handcuffed, Edger eventually said, "I'll give you my ID." (Ex. J, Joyner Decl., Tab 1, 20:38:00).

23.     Admitted that Officer Perillat discovered Edger's driver's license in Edger's left pocket during a post-arrest search. (Ex. A, R. Edger Dep., pp. 164-66; Ex. J, Joyner Decl., Tab 1, 20:40:04-20:40:15).

24.     Denied as conclusory and unsupported by the cited evidence.

**B.     Additional Undisputed Facts**

1.     On June 9, 2019, Edger asked Nuby if he would go with him to the church to "let [him] fix a tire on a car and bring it back to the shop[.]" (Ex. F, Nuby Dep., p. 23). Nuby agreed. (Id.).

2.     Edger drove his personal vehicle, a black hatchback to the church. (Ex. A, R. Edger Dep., pp. 69, 118; Ex. F, Nuby Dep., p. 26).

---

[3] The essential facts in this case are captured on Officers McCabe and Perillat's body-worn cameras. The citations to video footage are references to the hour, minute, and second displayed on the video. They correspond to the time of day on a twenty-four hour notation, often called military or international time.

3.      The plan was for Nuby to drive Edger's car back to the shop and for Edger to drive Ghosh's car back to the shop. (Ex. A, R. Edger Dep., Tab 1; Ex. A, R. Edger Dep., pp. 120-123; Ex. F, Nuby Dep., pp. 29-30).

4.      Alternatively, if Ghosh's car could be repaired at the church, Edger would have driven his car back to the auto shop and left Ghosh's car there. (Ex. A, R. Edger Dep., pp. 119-21, 122, 124).

5.      Prior to beginning his shift, Turner was unaware that Edger had visited the church earlier to retrieve the key to Ghosh's car or that he and Nuby would be coming to the church to repair the car. (Ex. G, Turner Dep., pp. 25, 52).

6.      When Officer McCabe arrived at the church first, she observed two men "messing with" the red car in the parking lot. (Ex. B, McCabe Dep., p. 53).

7.      More specifically, Edger was on the ground, laying on his left side with his back to Officer McCabe. (Ex. J, Joyner Decl., Tab 1, 20:36:15). Nuby was standing near the front right tire, twirling the keys to Edger's car in his hand. (Id.; Ex. A, R. Edger Dep., pp. 145-46; Ex. F, Nuby Dep., p. 41).

8.      When Officer McCabe first asked about the ownership of Ghosh's car, Edger initially said it was his. (Ex. A, R. Edger Dep., Tab 4). Edger than said it belonged to one of his customers. (Id.).

5

9.      When Edger caused Ghosh's car to suddenly roll backwards and fall off the jack, Edger became frustrated, irritated, and agitated. (Ex. J, Joyner Decl., Tab 1, 20:37:26; Ex. A, R. Edger Dep., pp. 148-50).

10.     After the car rolled back, Edger shifted to his left knee, wobbled slightly before grabbing his tools, and kept his back to Officer McCabe. (Ex. J, Joyner Decl., Tab 1, 20:37:26).

11.     When Officer McCabe first asked Edger and Nuby for identification, Nuby reached for his right pocket and began to pull out his wallet. (Ex. A, R. Edger Dep., Tab 4; Ex. A, R. Edger Dep., pp. 82, 124-25; Ex. J, Joyner Decl., Tab 1, 20:36:11–20:37:55).

12.     Edger, however, refused to comply and abruptly jumped up from the ground, took a step toward Officer McCabe, and turned to face her while simultaneously throwing his right hand up and slapping his right outer thigh. (Ex. J, Joyner Decl., Tab 1, 36:11–20:37:55).

13.     When Edger said, "I ain't going to submit to no ID right now," Officer McCabe interpreted it as Edger's refusal to provide any information that would allow her to identify him, including his name. (Ex. B, McCabe Dep., pp. 17, 41-43, 106, 133-34).

14.    Calmly, Officer McCabe asked for Edger and Nuby's identification for a second time. (Ex. A, R. Edger Dep., Tab 4; Ex. A, R. Edger Dep., p. 126; Ex. J, Joyner Decl., Tab 1, 20:36:11–20:37:55). Again, Edger refused to comply:

> **McCabe**: Okay. No, you do need to give me your ID or driver's license. . .
> **Edger**: I don't mean to be . . . No I don't. Listen, I don't want you to run me in for nothing.

(Id.).

15.    When Edger told Officer McCabe he did not want her to "run [him] in," it was because he did not want his identity, name, or any other information communicated over Officer McCabe's radio. (Ex. A, R. Edger Dep., pp. 126-28).

16.    On the other hand, Nuby continued to comply with Officer McCabe's requests. (Ex. J, Joyner Decl., Tab 1, 20:37:45-20:37:55). By this point, Nuby had opened his wallet and retrieved his driver's license. (Id.).

17.    When Edger refused to comply with Officer McCabe's request for his identification a second time, Officer McCabe believed that Edger was not going to or did not want to cooperate with her investigation. (Ex. B, McCabe Dep., pp. 133-34, 142, 169-70, 176, 194-95, 201-02).

18.    In tandem with his repeated refusal to provide identification, Edger repetitively waved his hands and arms, shifted his weight toward Officer McCabe, and a took step closer to her. (Ex. J, Joyner Decl., Tab 1, 20:37:38-20:37:41).

Edger then pushed hair back out of his face and hiked up his pants by the beltloops. (Id. at 20:37:42-20:37:55).

19.    Based on Edger's aggressive demeanor combined with his concurrent physical actions, Officer McCabe felt threatened by Edger. (Ex. B, McCabe Dep., pp. 44-50).

20.    After Edger failed to respond to her first two requests, Officer McCabe confirmed that Edger was refusing to provide his identification:

> **McCabe**: Are you refusing me, are you refusing to give me your ID or driver's license?

(Ex. A, R. Edger Dep., Tab 4; Ex. A, R. Edger Dep., pp. 83-84, 128-30, 133-34, 150-52; Ex. J, Joyner Decl., Tab 1, 20:36:11–20:37:55).

21.    Edger did not respond to or comply with Officer McCabe's third request for identification. (Ex. A, R. Edger Dep., pp. 129-30, 133-34, 150-52; Ex. J, Joyner Decl., Tab 1, 20:36:11–20:37:55).

22.    Officer McCabe concluded from Edger's statements that he did not intend to cooperate with her investigation. (Ex. B, McCabe Dep., pp. 177, 194-95, 201-02). Specifically, Edger repeatedly refused to (i) identify himself, (ii) submit to a warrants check, or (iii) comply with her requests—all of which impeded Officer McCabe from determining whether Edger was lawfully present at the church. (Id.; see also Ex. A, R. Edger Dep., pp. 150-52, pp. 184-85).

23.     In addition, Officer McCabe interpreted Edger's demeanor and physical actions as a refusal to comply with her investigation. (Ex. B, McCabe Dep., pp. 45-50, 55-57, 177, 194-95, 201-02).

24.     Considering the totality of the circumstances, Officer McCabe determined that Edger's noncompliance and adamant refusal to submit to an identification obstructed her investigation. (Ex. B, McCabe Dep., pp. 45-50, 55-57, 177, 194-95, 201-02; Ex. J, Joyner Decl., Tab 1, 20:41:33).

25.     Prior to his arrest, Edger understood that Officer McCabe's purpose in asking for his identification was to determine who he was. (Ex. A, R. Edger Dep., p. 139). However, Edger did not comply with any of Officer McCabe's requests. (Id. at pp. 150-52; Ex. A, R. Edger Dep., Tab 4; Ex. J, Joyner Decl., Tab 1, 20:37:10-20:37:50).

26.     At no point before his arrest did Edger identify himself verbally or otherwise provide any identifying information. (Ex. A, R. Edger Dep., pp. 129-30, 133-34, 150-52; Ex. A, R. Edger Dep., Tab 4; Ex. J, Joyner Decl., Tab 1, 20:36:11–20:37:55).

## III.   ARGUMENT

In his motion for partial summary judgment, Edger argues that "because the Eleventh Circuit held that [Officers] McCabe and Perillat lacked probable cause

and arguable probable cause to arrest Edger for any crime, [he] is entitled to summary judgment as to liability on his [section] 1983 false arrest claim." (Doc. 60, p. 7). This argument, which is based on the law-of-the-case doctrine, is inherently flawed for two related reasons. First, it presupposes no grounds exist for upholding Edger's arrest besides those addressed on appeal by the Eleventh Circuit. Two, it presupposes defendants are limited to only raising at trial those specific defenses considered and decided by the Eleventh Circuit in the prior appeal. In both of these respects, Edger is just plain wrong.

More to the point, Edger is not entitled to partial summary judgment on his section 1983 false arrest claims because the law-of-the-case doctrine is not controlling on all liability questions. To be sure, there are multiple other criminal offenses that Officers McCabe and Perillat could have charged Edger with that have not yet been analyzed by this Court or the Eleventh Circuit. Thus, the law-of-the-case doctrine does not conclusively resolve **all** section 1983 liability issues in this litigation. Although it is certainly understandable that Edger would want to bypass the liability phase of trial and have the jury consider only the issue of damages, that was not the instruction by the Eleventh Circuit nor the net effect of its appellate decision. Defendants explain in more detail below.

## A.    Law-of-the-Case Doctrine Is Not Applicable Here.

It is important to understand not only what the law-of-the-case doctrine is, but also what it is not. Defined at a high level, the doctrine states that "courts are generally bound by a prior appellate decision in the same case." Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009). And when applicable, the doctrine has three exceptions: "(1) the evidence in a subsequent trial is substantially different; (2) there is a change in controlling law; or (3) the prior decision was clearly erroneous and would work manifest injustice." United States v. Valme, No. 23-11314, 2024 WL 123274, at *2 (11th Cir. Jan. 11, 2024) (citing United States v. Stein, 964 F.3d 1313, 1323 (11th Cir. 2020)).

Significantly, however, the scope of the law-of-the-case doctrine is **limited** in that it "only bars consideration of 'those legal issues that were actually, or by necessary implication, decided in the former proceeding.'" Newman v. Ormond, 456 F. App'x 866, 867 (11th Cir. 2012) (quoting Oladeinde v. City of Birmingham, 230 F.3d 1275, 1288 (11th Cir. 2000)). In other words, the law-of-the-case doctrine "do[es] not extend to issues the appellate court **did not address**." Otero v. NewRez, LLC, No. 23-10622, 2024 WL 325341, at *1 (11th Cir. Jan. 29, 2024) (emphasis added). On this very point, the Eleventh Circuit has explained:

> Our case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was

outside the scope of the prior appeal. See Lawson v. Singletary, 85 F.3d 502, 512–13 (11th Cir.1996) (noting that the law of the case doctrine did not apply, in part, because the issue at hand—whether a particular prison regulation comported with a federal statute—was not briefed or argued in the prior appeal, which concerned the appropriate standard of constitutional review); Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 951 F.2d 1217, 1218 n. 1 (11th Cir.1992) (noting that the panel was not prohibited by the law of the case doctrine from dismissing a case based on lack of standing where the prior appellate panel had not considered the standing question), rev'd on other grounds, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); Hester v. Int'l Union of Operating Eng'rs, 941 F.2d 1574, 1581 n. 9 (11th Cir.1991) (noting that an overly expansive interpretation of the law of the case doctrine would lead to a situation where a court of appeals would have to consider many issues neither decided by the district court nor briefed to the appellate court, lest future panels be precluded from reaching those issues); Gaines v. Dougherty County Bd. of Educ., 775 F.2d 1565, 1568–69 (11th Cir.1985) (noting that prior appellate decisions, which discussed only the merits of several desegregation plans, did not prevent the court from later addressing the district court's prior rulings regarding attorneys' fees); Conway v. Chem. Leaman Tank Lines, Inc., 644 F.2d 1059, 1062 (5th Cir. Unit A May 1981) (affirming the trial court's grant of a new trial on grounds that, at the time of prior appeals, had not yet been considered by the district court, and therefore were not ruled upon by prior appellate panels); see also Quern v. Jordan, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148, 59 L.Ed.2d 358 (1979) (noting that law of the case "comes into play only with respect to issues previously determined") (emphasis added).

Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1332–33 (11th Cir. 2005) (noting law-of-the-case doctrine only applies to the extent the issue in question was within the scope of the prior appeal). When examined through that lens, it is clear why Edger's argument falls completely apart.

Assuming, without conceding, that Edger's arrest is not sustainable on the basis of violations of Ala. Code § 13A-10-2, Ala. Code § 15-5-30 (1975), and/or Ala. Code § 32-6-9 (1975) given the Eleventh Circuit's prior ruling, there is no rule or substantive law that limits defendants to arguing **only** those criminal offenses in defense of this case. See Devenpeck v. Alford, 543 U.S. 146 (2004) (holding that as long as probable cause exists to arrest individual for any crime, arresting officer's stated reason for making arrest is irrelevant). As will be discussed below, there are multiple other charges upon which Officers McCabe and Perillat could have based their arrest of Edger. Since these alternative grounds for upholding Edger's arrest were not considered or ruled upon by the Eleventh Circuit (i.e., they were outside the scope of the prior appeal), the law-of-the-case doctrine does not preclude defendants from relying upon them at trial in contesting section 1983 false arrest liability. Thus, Edger's motion for partial summary judgment should be denied.

**B.     Probable Cause Existed To Arrest Edger.**

By way of illustration and not limitation, probable cause[4] existed to arrest Edger for several different criminal offenses not yet considered in this litigation. They include: (1) Huntsville, Ala. Code § 17-103 (2003), Trespassing, prowling, loitering, etc. on private property ("section 17-103"); (2) Huntsville, Ala. Code § 17-71 (2003), Emergency calls; interference ("section 17-71"); (3) Ala. Code § 32-8-83 (1975), Unauthorized damaging or tampering with vehicles; and (4) Huntsville, Ala. Code § 73-21 (2003), Vehicle Repair in Residential Districts or on Residential Lots ("section 73-21"). Officers McCabe and Perillat will address each in turn below.

**1.     Probable Cause Existed to Arrest Edger for Violating Section 17-103.**

Officers McCabe and Perillat had probable cause to arrest Edger for violating section 17-103, which makes trespassing, prowling, loitering, etc. on private property unlawful. In particular, the ordinance states:

---

[4] Probable cause exists where "a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.'" District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)). Furthermore, under Eleventh Circuit precedent, "[t]he existence of probable cause does not depend on the stated reasoning an officer provided to an arrestee when explaining why the individual is under arrest." McDowell v. Gonzalez, 820 F. App'x 989, 991 (11th Cir. 2020) (citing Devenpeck, 543 U.S. at 153-56). In other words, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Williams v. Aguirre, 965 F.3d 1147, 1162 (11th Cir. 2020) (quoting Devenpeck, 543 U.S. at 153).

It shall be unlawful for any person to enter, remain, loiter, prowl or wander about, whether in a motor vehicle or on foot, upon or around any private premises, or in any enclosed lot, or in and around any dwelling, without the permission, consent or knowledge of the owner or lessee of the premises, lot or dwelling.

Huntsville, Ala. Code § 17-103 (2003). Boiled down, it is unlawful for a person (1) to enter, remain, loiter, prowl or wander about on foot or in a vehicle; (2) on or around any private premises, an enclosed lot, or in and around any dwelling; (3) without permission, consent, or knowledge of the owner of the premises, lot, or dwelling. Id.

Addressing the first and second elements together, it is clear that Edger entered and remained on private property. That is, it is undisputed that Edger drove his vehicle onto church property, exited his vehicle, and remained there while working on Ghosh's car. Thus, the first two elements are easily met.

With respect the third element, the information initially available to Officer McCabe was that Turner, the church security guard, had reported via 9-1-1 that suspicious persons were on private property when they were not supposed to be there. Thus, Officer McCabe did not have any indication whatsoever that Edger had the church's permission, consent, or knowledge to be on the premises. Nor could Officer McCabe reasonably have concluded that Edger indeed had permission, consent, or knowledge to be present since he failed to identify himself.

15

Despite Officer McCabe's repeated attempts to identify Edger, he belligerently refused to provide any information that would identify him or support a determination of whether **he** was lawfully present at the church. To the contrary, Edger expressly told Officer McCabe that he was not "going to submit to no ID" and did want her "to run [him] in." These statements, coupled with Edger's hostility, could easily indicate to a reasonable police officer that Edger did not have permission to be on the church's private property.

Based on the circumstances, Officer McCabe needed to identify Edger to determine whether he was authorized to be at the church and working on Ghosh's car. In other words, identifying Edger was the initial task in a series of investigative steps that were necessary to ultimately verify whether he had permission or consent from the church to be on private property. Without Edger's identification, Officer McCabe was unable to conclude that he had permission to be present. Therefore, she had probable cause to arrest him for violating section 17-103. At least a reasonable jury could so determine. See generally Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) ("Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction."); see also Davis v. City of Apopka, 78 F.4th 1326, 1336 (11th Cir.

2023) (citing <u>Panetta v. Crowley</u>, 460 F.3d 388, 395–96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

### 2. Probable Cause Existed to Arrest Edger for Violating Section 17-71.

Officers McCabe and Perillat also had probable cause to arrest Edger for violating section § 17-71, which makes it unlawful to interfere with emergency calls. Specifically, the ordinance states:

(a)    For purposes of this section, the following terms will be defined, as follows:

   (1)    Emergency response officer means any city employee, including but not limited to police and fire personnel, and other emergency response personnel, whether employed by the city or otherwise. The term shall not include the public information officer of the police department or the fire and rescue department.

   (2)    Emergency call means any call for assistance, whether emergency or otherwise, which is being or recently has been transmitted over city, police, fire or emergency radio systems.

(b)    It shall be unlawful for any person, after hearing or receiving information regarding an emergency call, to contact emergency response officers, including those at the police department, fire and rescue department, or any participating emergency response agency, including the E

911 center, in an attempt to obtain information about an emergency call. It shall also be unlawful for any person to interfere in any way with an emergency response officer in answering an emergency call.

(c)    The provisions of subsection (b) of this section shall not preclude a person from contacting emergency response officers at the scene of an emergency so long as such conduct does not interfere with an emergency response officer in responding to the emergency call or otherwise in performing his duties.

Huntsville, Ala. Code § 17-71 (2003). In other words, it is unlawful for a person to "interfere in any way" with any police officer answering any call for assistance, whether an emergency or not. Id.

Here, Edger cannot genuinely dispute that he interfered in some way with the police response to Turner's 9-1-1 suspicious persons call. Officers McCabe and Perillat not only had the authority, but the duty, to investigate this call for police service. (See Ex. D, McCarver Dep., 85 ("[Officer McCabe] needed to know who this person was and whether or not they had the authority to be doing what they were doing or were they committing a crime. She had the duty to figure that out."); see also Scurlock v. State, 487 So. 2d 286, 289 (Ala. Crim. App. 1986) ("These factors made [the officer's] 'investigatory actions' proper and 'neglect to take those actions would have amounted to poor professional judgment.'") (quoting Walton v. State, 461 So. 2d 894, 897) ("A policeman who lacks the precise level of

information necessary for probable cause to arrest is not required simply to shrug his shoulders and allow a crime to occur or a criminal to escape, and a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in the light of the facts known to the officer at the time.")). Once on the scene, identifying Edger to determine whether **he** was authorized to be at the church and permissibly "messing with" Ghosh's car was the first task in a series of investigative steps necessary to ultimately verify whether Edger was engaged in criminal activity. Yet the undisputed facts show that Edger did not provide any information concerning his identity despite repeated inquiries. And even though Edger understood that Officer McCabe's questions were designed to find out who he was, he still chose not to comply. This undoubtedly interfered with Officer McCabe's ability to handle in a timely and efficient manner Turner's 9-1-1 suspicious persons call. Thus, Officer McCabe also had probable cause to arrest Edger for violating section 17-71.[5] Again, a reasonable jury could draw this conclusion. See generally, e.g., Davis, 78 F.4th at 1343 ("explaining that arresting

---

[5] It is worth emphasizing that unlike Ala. Code § 13A-10-2 (1975), section 17-71 does not require interference to be physical in nature. As a result, there is a significantly lower bar for probable cause for this criminal offense than is required by the obstructing governmental operations statute. See D.A.D.O. v. State, 57 So. 2d 798, 806 (Ala. Crim. App. 2009) (defining "interference" under section 13A-10-2 to include a degree of physicality). Indeed, whether the interference by Edger was physical in nature is a total non-issue under section 17-71.

officers making a probable cause determination 'are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed'") (quoting <u>Paez v. Mulvey</u>, 915 F.3d 1276, 1286 (11th Cir. 2019)).

### 3. Probable Cause Existed to Arrest Edger for Violating Ala. Code § 32-8-83 (1975).

Additionally, Officers McCabe and Perillat had probable cause to arrest Edger for violating Ala. Code § 32-8-83 (1975), which makes it a misdemeanor to damage a vehicle or remove any of a vehicle's parts without the right to do so. Specifically, the statute states:

> (a) A person who, willfully and without right to do so, damages a vehicle or damages or removes any of its parts or components is guilty of a misdemeanor.

> (b) A person who, without right to do so and with intent to commit a crime, tampers with a vehicle, or goes in or on it, or works or attempts to work any of its parts or components, or sets or attempts to set it in motion is guilty of a misdemeanor.

Ala. Code § 32-8-83 (1975). Importantly, the purpose of this chapter "was not enacted to prevent motor vehicle accidents, but to prevent motor vehicle thefts. The very title states that it is an antitheft act. The overall plan of this chapter shows exclusive attention to maintaining records of the identity and ownership of

vehicles." <u>Treadwell Ford, Inc. v. Campbell</u>, 485 So. 2d 312 (Ala. 1986), appeal dismissed, 486 U.S. 1028.

Here, the fact that Edger refused to identify himself so Officer McCabe could determine whether he had a right to be removing the tire gave rise to probable cause to believe that he did not have such permission. Importantly, Officer McCabe did not need to prove every element of the crime before arresting Edger. <u>Davis</u>, 78 F.4th at 1349 ("[A]n officer is not required to be able to prove every element of a crime before making an arrest. . . . [Nor is] an officer [] required to have specific evidence of a suspect's subjective intent before making an arrest when the suspect's conduct gives rise to probable cause. . . . [Nor is] an officer [] required to resolve every inconsistency in the evidence before making an arrest. . . . [Nor is] an officer [] required to believe, or to rule out, a suspect's innocent explanation for suspicious facts [before making an arrest]." The fact that Edger removed a part on the vehicle but defiantly objected to complying with a reasonable request for identification gave Officer McCabe sufficient probable cause to arrest him for violating Ala. Code § 32-8-83 (1975). At a bare minimum, there is at least a legitimate jury question presented by these facts. <u>See</u> <u>id.</u>

### 4. Probable Cause Existed to Arrest Edger for Violating Section 73.21.

Lastly, Officers McCabe and Perillat also had probable cause to arrest Edger

for violating section 73.21, also known as the Shadetree Mechanic Ordinance, which makes it a misdemeanor to damage a vehicle or remove any of a vehicle's parts without the right to do so. Specifically, the statute states:

> (1) Vehicle repair for purposes of this Section 73.21 shall mean and include the repair and/or body work of any motorized or non-motorized vehicle.
>
> (2) Vehicle repair performed in a residential district or on a residential lot shall be allowed subject to each of the following conditions:
>
>> (a) Vehicle repair shall be incidental to a primary permitted residential use and shall be on the same lot as the primary residential structure;
>>
>> (b) Vehicle repair, including without limitation vehicles in the process of or awaiting repair, shall be performed on vehicles which are registered in the name of or titled to a member of the household of the primary residential structure, and proof of title may be requested by any official charged with the enforcement of this ordinance;
>>
>> (c) Vehicle repairs shall not be performed after 10:00 p.m. and before 7:00 a.m.
>
> (3) Nothing herein shall be construed to relieve any person or entity from complying with any other applicable provision of this zoning ordinance, or any other laws of this city including without limitation ordinances regulating inoperable vehicles.

Put differently, under the ordinance, vehicle repairs are **only** permitted in residential districts if three conditions are met: (1) vehicle repair must be incidental

to the permitted residential use; (2) the vehicle repair must be performed on vehicles registered in the name or titled to the church; and (3) repairs can only be performed between 7:00 am and 10 pm.

Here, it is undisputed that the church is located in the Residence 1-A District. (Ex. L, Cummings Aff., ¶ 3). Thus, vehicle repairs are permitted in this district if—and only if—all three conditions are satisfied. Applying the ordinance, it is clear that the second element cannot be met,[6] thus giving Officer McCabe probable cause to arrest Edger on the basis of subsection (2)(b). Despite requesting information about Edger's identity and the owner of the vehicle he was repairing, Edger refused to comply with Officer McCabe's multiple requests for identification. Furthermore, it is undisputed that the vehicle was not registered to the church itself, as the security guard informed dispatch that Edger was messing with an employee's car—not a church vehicle. Likewise, it is undisputed that Edger's customer, Ghosh, is not a member of the church. (Ex. E, Ghosh Dep., p. 16, lines 3-12 [explaining Ghosh attends a Hindu temple called North Alabama Cultural Centre]. Officer McCabe therefore had probable cause to arrest Edger for violating the Shadetree Mechanic Ordinance. There is, at least, a trial-worthy liability question here for a jury to decide. See generally, e.g., Jordan v. Mosley,

---

[6] Defendants assume in this brief, for argument sake only, that the first and third elements are satisfied since vehicle repairs are at best incidental to ordinary church activities and the repair work occurred between 7:00 a.m. and 10:00 p.m.

487 F.3d 1350, 1355 (11th Cir. 2007) ("No officer has a duty to prove every element of a crime before making an arrest."); see also Davis, 78 F.4th at 1335 ("It is not unusual to find at the scene of a crime evidence pointing in different directions, but '[a] law enforcement officer is not required to resolve every inconsistency found in the evidence.' Paez, 915 F.3d at 1286. That is especially true because on-the-scene officers are often 'hampered by incomplete information and forced to make a split-second decision between action and inaction.' Crosby v. Monroe Cnty., 394 F.3d 1328, 1334 (11th Cir. 2004)").

In summary, Officers McCabe and Perillat had probable cause to arrest Edger any number of criminal offenses proscribed by local and/or state law, including, but not limited to, section 17-103, section 17-71, Ala. Code § 32-8-83 (1975), and section 73-21. Since none of these alternative grounds for upholding Edger's arrest were considered or ruled upon by the Eleventh Circuit, the law-of-the-case doctrine does not prevent defendants from contesting liability at trial on these bases. In other words, Edger is not entitled to proceed to trial solely on the issue of damages, but instead must prove section 1983 liability too.

## IV.   CONCLUSION

For these reasons, the Court should deny Edger's motion for partial summary judgment.

*S/C. Gregory Burgess*
C. Gregory Burgess (ASB-1519-R79C)
L. Franklin Corley IV (ASB-7350-T73C)
Stephanie Margaret Hal (ASB-1050-F67A)

**Attorneys for defendants Officer Krista McCabe, Officer Cameron Perillat, and City of Huntsville, Alabama**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email:  cgb@lanierford.com
        lfc@lanierford.com
        smh@lanierford.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

HENRY F. (HANK) SHERROD III
**HENRY F. SHERROD III, P.C.**
119 South Court Street
Florence, Alabama 35630
Telephone: (256) 764-4141
Facsimile: (877) 684-0802
Email: hank@alcivilrights.com

*S/C. Gregory Burgess*
C. Gregory Burgess