IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ROLAND EDGER,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 5:19-cv-1977-LCB |
| **KRISTA MCCABE,** *et al.*, | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM OPINION

## I. Background

Because the background facts of this case have been repeated often during this litigation, the Court will not re-tread them unnecessarily. Briefly, Huntsville police officers Krista McCabe and Cameron Perillat arrested Roland Edger while he was working on a customer's vehicle in a church parking lot, based on Edger's refusal to provide an ID or driver's license. *See Edger v. McCabe*, 84 F.4th 1230, 1233-35 (11th Cir. 2023). After the charges against him were dropped, Edger brought a federal false-arrest claim against Officers McCabe and Perillat, and a state false-arrest claim against the Officers and the City of Huntsville.[1] *Id.* at 1235.

After the parties cross-moved for summary judgment, this Court granted

---

[1] After the Court granted Edger's motion for judgment as a matter of law on October 23, 2024, Edger also orally moved to dismiss Officers McCabe and Perillat from his state law false arrest claim (Count II). As reflected in the record, the Court also granted that motion.

1

summary judgment to Defendants on qualified immunity grounds. (Doc. 46 at 21). The Court found that Officers McCabe and Perillat had arguable probable cause to arrest Edger for violating Alabama's obstruction statute, (*id.* at 13-19) and held that "Defendants [were] entitled to summary judgment . . . by a hair's breadth." (*Id.* at 2).

On appeal, the Eleventh Circuit reversed the Court's grant of qualified immunity, holding that "Officers McCabe and Perillat violated Mr. Edger's clearly established Fourth Amendment rights when they arrested him with neither actual, nor arguable, probable cause." *Edger*, 84 F.4th at 1240. The Court of Appeals also vacated this Court's "dismissal of the state law claims." *Id.* at 1241. On remand, Edger renewed his motion for partial summary judgment, which the Court denied, (Doc. 84), and the case proceeded to trial.

A jury trial was held from October 21 to October 23, 2024. During the trial, the jury heard from the following witnesses: Officer McCabe, Officer Perillat, Roland Edger, Susan Edger (Plaintiff's wife), Gaynell Edger (Plaintiff's sister), and Bill Weinzierl (Edger's employer). At the close of evidence on October 22, Plaintiff and Defendants orally moved for judgment as a matter of law [JMOL] under Fed. R. Civ. P. 50(a), and the Court asked the parties to provide additional legal support for their motions.

The next day, after considering the parties' arguments and the whole record, the Court **DENIED** Defendants' motion for judgment as a matter of law and **GRANTED** Plaintiff's motion. As a result, the Court submitted only the issue of damages to the jury, which awarded Edger $150,000 in compensatory damages and $2,000 in punitive damages. (Doc. 101).

For clarity's sake, the Court issues this memorandum opinion as a supplement to its explanation on the record at trial.

II.     **Legal Standard**

Under Fed. R. Civ. P. 50(a), "[a]fter 'a party has been fully heard on an issue during a jury trial,' a court may 'grant a motion for judgment as a matter of law against the party' if 'the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *United States v. Approximately $299,873.70 Seized From a Bank of Am. Acct.*, 15 F.4th 1332, 1342 (11th Cir. 2021) (quoting Fed. R. Civ. P. 50(a)(1), (1)(B)).

In other words, "judgment as a matter of law is appropriate only when the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *United States v. Approximately $299,873.70 Seized From a Bank of Am. Acct.*, 15 F.4th 1332, 1342 (11th Cir. 2021) (cleaned up). In deciding a motion for JMOL, "a district court must 'review all of the evidence in the record and draw all reasonable

inferences in favor of the nonmoving party . . . without making any credibility determinations or weighing evidence.'" *Id.* (citation omitted).

**III.     Edger was entitled to judgment as a matter of law because no reasonable jury could find that Officers McCabe and Perillat had probable cause to arrest Edger.**

In Defendants' oral motion for JMOL, they asserted that the Officers were entitled to both federal qualified immunity and state-agent immunity because the Officers had probable cause to arrest Edger for two crimes—Huntsville's loitering ordinance and Alabama's vehicle tampering law. Edger moved for JMOL for the opposite reason, asserting that no evidence supported Defendants' claim of probable cause for those crimes.

Before addressing the evidentiary record, the basics of qualified immunity require some exposition. Although a warrantless arrest "lacking probable cause" is a violation of the Fourth Amendment, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). When "determining whether a city police officer receives . . . immunity" from a false arrest claim, the existence of probable cause provides immunity under both federal and Alabama law, because the inquiries are identical. *Id.* at 741.

Officers don't need actual probable cause to get immunity, only arguable probable cause—"[i]n the false arrest context, arguable probable cause exists where

4

a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Edger*, 84 F.4th at 1236-37 (cleaned up). This context-specific inquiry "depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1237 (citation omitted).

That context-specific inquiry brings us to the evidence. At trial, Defendants offered two possible sources of probable cause—the City of Huntsville's loitering ordinance and Alabama's vehicle tampering law. Huntsville's loitering ordinance has three elements:

1) "enter[ing], remain[ing], loiter[ing], prowl[ing] or wander[ing] about,"
2) "upon or around any private premises, or in any enclosed lot, or in and around any dwelling,"
3) without the owner or lessee's permission, consent, or knowledge.

Huntsville, Ala. Code § 17-103 (2003). And Alabama's vehicle tampering law is similarly structured, requiring:

1) willful,
2) damage or removal of a vehicle or its parts,
3) without the right to do so.

Ala. Code § 32-8-83(a) (1975).

There's no dispute that Edger was on private property, and that he was "willfully" removing the vehicle's parts, so a violation of either statute depends on a lack of permission to either be on the property or remove parts from the vehicle. Yet there's no evidence that would suggest to a reasonable officer that Edger lacked

5

permission to (1) be on church property or (2) remove parts from the car when he was arrested.

At trial, the Officers could only point to a 911 suspicious persons call from the church security guard as a source of *reasonable suspicion*. (Def. Ex. 6).[2] And the Officers repeatedly testified that the scene they encountered and Edger's behavior (including his refusal to provide an ID) were not enough to give them *probable cause* to arrest him for loitering or tampering. Without more, the Officers lacked sufficient information to make the leap from "reasonable suspicion" to "probable cause" for an arrest.

To support an arrest based on probable cause, the Fourth Amendment requires that law enforcement conduct "a reasonable investigation within the bounds of what can be expected of imperfect people." *Harris v. Hixon*, 102 F.4th 1120, 1125 (11th Cir. 2024). Here, the undisputed evidence contains the hallmarks of an *unreasonable* investigation: Edger was arrested despite "readily available evidence that [the Officers] knew about or were provided that would have plainly, obviously, and irrefutably exonerated" the arrestee, and the Officers were "given plainly exculpatory and easily verifiable information" that they ignored. *Id.* at 1129.

---

[2] As this Court has ruled elsewhere, although a "911 call no doubt provides reasonable suspicion for an investigatory stop . . . arresting officers are still 'required to conduct a reasonable investigation to establish probable cause.'" (Doc. 97 at 5 n. 1) (citations omitted).

Look no further than the dialogue between Officer McCabe and Edger at the scene:

- Officer McCabe: "What are y'all doing?"
    - Edger: "Getting the car fixed."
- Officer McCabe: "Is this your car?"
    - Edger: "Yeah, well, it is one of my customer's."
- Officer McCabe: "One of your customer's?"
    - Edger: "Kajal Patel, yep. I was over here earlier."
- Officer McCabe: "Whose car is that?" (referencing a different vehicle)
    - Edger: "That's mine."
- Officer McCabe: "The black one?"
    - Edger: "Yeah."
- Officer McCabe: "Do y'all have driver's license or IDs on you?"
    - Edger: "I ain't going to submit to no ID. Listen, you call the lady right now. Listen, I ain't got time for this. I don't mean to be rude, or ugly, but . . ."
- Officer McCabe: "Are you refusing to give me your driver's license or ID?"
    - Edger: "I'm telling you that if you will call this lady that owns this car . . ."

*McCabe Body Camera*, Def. Ex. 1 at 0:00:35-0:02:15. In the middle of Edger's answer to the last question, Officer Perillat arrests Edger, around twenty-eight seconds after he gets out of his car. *Perillat Body Camera*, Def. Ex. 4 at 0:00:40-0:01:08. The *entire* interaction lasted one minute and forty-five seconds. *McCabe Body Camera* at 0:00:30-0:02:15.

To summarize: Before the arrest, the Officers were told by 911 dispatch that there were two men "messing with" a car belonging to a church employee. (Def. Ex. 18). When questioned, Edger asserted that he knew the owner and had permission

7

to fix the car and told the Officers to call the owner. *McCabe Body Camera* at 0:02:15. Another 60 seconds of investigation would have confirmed that Edger was telling the truth—pauses and delays aside, it took Officer McCabe less than a minute, via phone call, to confirm ownership of the vehicle and Edger's permission to work on it. *McCabe Body Camera* at 0:22:13-0:23:05.

Despite the brevity of the Officers' investigation, "[t]his is not a case where time was of the essence in making the arrest." *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989). There were no allegations that Edger had committed or was committing a crime of violence or presented an imminent threat to human life. Nor was Edger fleeing arrest or questioning. Instead, Edger gave reasonable, easily verifiable responses to the Officers, and was arrested for his lawful refusal to provide identification.

## IV.   Conclusion

The Court recognizes that "[d]istrict courts seldom enter a judgment as a matter of law, for it is appropriate only when there can be but one reasonable conclusion as to the verdict." *Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023) (cleaned up). This is one of those rare cases.

After "review[ing] the record taken as a whole," even after drawing all reasonable inferences in Defendants' favor, the Court finds that no reasonable jury could conclude that Officers McCabe and Perillat had probable cause to arrest Edger

for loitering or tampering without further investigation. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). Considering all the exculpatory evidence available to Officers McCabe and Perillat, a reasonable officer would have concluded (at the very least) that further investigation was needed before Edger could be arrested for loitering or vehicle tampering—a fact the Officers conceded at trial. For these reasons, the Court **GRANTED** Edger's motion for judgment as a matter of law and **DENIED** Defendants' motion for judgment as a matter of law.

**DONE** and **ORDERED** this October 30, 2024.

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE